Michelle S. Lowery (SBN 302882)
 Email:  mlowery@mwe.com
Jon S. Dean (SBN 184972)
 Email: jdean@mwe.com
Jeffery D. McFarland (SBN 157628)
 Email: jdmcfarland@mwe.com
Grant J. Maxwell (SBN 275329)
 Email: gmaxwell@mwe.com
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3800
Los Angeles, CA 90067-3206
Telephone:   +1.310.277.4110
Facsimile:   +1.310.277.4730

Attorneys for Plaintiff
Honey Bum, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION - LOS ANGELES

| | |
|---|---|
| HONEY BUM, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>FASHION NOVA, INC., a California corporation; RICHARD D. SAGHIAN, an individual; and DOES 1 THROUGH 10,<br><br>Defendant. | Case No.: 20-CV-11233<br><br>**COMPLAINT**<br><br>[JURY TRIAL DEMANDED] |

Plaintiff Honey Bum, LLC ("Honey Bum") by and through its counsel, McDermott Will & Emery, LLP, hereby complains against defendants Fashion Nova, Inc. ("Fashion Nova") and Richard D. Saghian ("Mr. Saghian") and alleges as follows:

## INTRODUCTION

1.     Using monopolistic tactics, Fashion Nova and Mr. Saghian unlawfully, unconscionably and underhandedly attempted to place a stranglehold on the Los Angeles-sourced fast fashion market and stifle its newest competitor—Honey Bum.

COMPLAINT

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

2.      Fashion Nova is a major online retailer that dominates the Los Angeles-sourced fast fashion[1] arena.  Over the past few years, Fashion Nova has become one of the world's most searched-for fashion brands and has grown exponentially.  In 2019, Fashion Nova reported more than $550 million in net sales and is projected to exceed $2 billion in revenue in 2020.  Mr. Saghian is the Founder and CEO of Fashion Nova.

3.      Honey Bum, by contrast, is a small online retailer specializing in fast fashion that was founded in March 2017.  Honey Bum's business relies primarily upon various vendors located in Los Angeles.  Working with local vendors allows Honey Bum to adapt to new trends and offer new products to its customers without delay.

4.      Fashion Nova and Honey Bum are both social media driven companies that offer trendy, cost-conscious clothing and fashion goods to the same customer base—primarily, women in their teens through early 30s.  Both companies rely heavily on social media influencers[2] to advertise their products and, in the past, have used the very same influencers in connection with their respective products.

5.      Because Fashion Nova and Honey Bum focus on the same target market or demographic, have the same or substantially similar customers, and are based in, and operate out of, the same city (Los Angeles), they both rely on the same vendors to supply their products, goods and/or merchandise.

6.      Upon its founding in 2017, Honey Bum quickly built relationships with certain vendors and, in a matter of months, had great success. Not surprisingly, Honey Bum's success did not go unnoticed by Fashion Nova or Mr. Saghian.

---

[1]  The term "fast fashion" is commonly used to define clothing that is produced quickly in response to prevailing fashion trends.

[2]  "Social media influencers" are people and/or personalities with popular, frequently-visited accounts on social media platforms—Instragram, Tik Tok and SnapChat, among others others—that make their accounts, posts and shared content available to companies for marketing and/or advertising in exchange for payment.

7.      Beginning in or about October 2017, Honey Bum started having problems with many of its regular vendors.   Among other things, Honey Bum's vendors unexpectedly began:  (i) canceling purchase orders; (ii) refusing to fulfill purchase orders; and (iii) refusing to accept new purchase orders.   Some vendors were even refusing to communicate with Honey Bum altogether and at least one vendor bought back all of the merchandise it had sold to Honey Bum.

8.      Soon thereafter, Honey Bum was told by numerous vendors that Fashion Nova had threatened to cancel its own orders and withhold its future business if certain vendors accepted orders from, or did business with, Honey Bum.

9.      Concerned by this information and struggling to continue his business, on December 1, 2017, Honey Bum's CEO contacted Mr. Saghian via text message to ask Fashion Nova not to "block supply."  In response, Mr. Saghian did not deny employing the monopolistic tactic and admitted:  ". . . *I only told a couple of my vendors lol* [.]" But antitrust is no laughing matter.[3]

---

[3]  This is not Saghian's or Fashion Nova's first foray into troubled waters.  In 2019, an investigation by the United States Department of Labor discovered that some of the hourly workers producing Fashion Nova's clothing had been "paid illegally low wages"—some as low as $2.77 per hour.  As a result of the government's investigation, it was determined that $3.8 million was owed to hundreds of these hourly workers. *See*  www.nytimes.com/2019/12/16/business/fashion-nova-underpaid-workers.html. Then in April 2020, just after the COVID-19 pandemic had taken hold of the global economy, Fashion Nova was ordered to pay $9.3 million by the Federal Trade Commission after Fashion Nova was found to have failed to timely ship certain items purchased by its customers—in violation of the Mail Order Rule—and, in lieu of refunds, merely issued its customers gift cards containing store credit. *See*  www.ftc.gov/news-events/press-releases/2020/04/fashion-nova-will-pay-93-million-consumer-refunds-settle-ftc.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

10.     With this action, plaintiff Honey Bum hereby seeks monetary and injunctive relief on the grounds that defendants Fashion Nova and/or Mr. Saghian: (i) violated Section 1 of the Sherman Antitrust Act by acting, conspiring and/or contracting to impose restraints on trade or commerce; (ii) violated Section 2 of the Sherman Antitrust Act by monopolizing, attempting to monopolize and/or conspiring with others to monopolize trade or commerce; and/or (iii) tortiously, knowingly and intentionally interfered with Honey Bum's business and/or contracts, each of which harmed Honey Bum greatly, as set forth below.

## **THE PARTIES**

11.     Plaintiff Honey Bum, LLC is a California limited liability company with a principal place of business located at:  2027 Long Beach Avenue, Los Angeles, California 90068.

12.     Defendant Fashion Nova, Inc. is a California corporation with a principal place of business located at:  2801 East 46th Street, Vernon, California 90058.

13.     Defendant Richard D. Saghian is an individual residing in Los Angeles, California and is the Founder and Chief Executive Officer of Fashion Nova.

14.     Plaintiff Honey Bum is ignorant of the true names and capacities—whether individual, corporate, partnership, association, or otherwise—of defendant Does 1 through 10 (the "Doe Defendants"), inclusive, and therefore sues said parties by their fictitious names.  Honey Bum is informed and believes, and thereupon alleges, that each of the fictitiously named Doe Defendants is responsible in some manner for the injuries and damages alleged by Honey Bum in this Complaint.  Honey Bum will seek leave of the Court to amend this Complaint to show the true names and capacities of the fictitiously named Doe Defendants when such names have been ascertained.

15.     Plaintiff Honey Bum is informed and believes, and thereupon alleges that, at all relevant times, Fashion Nova, Mr. Saghian and the Doe Defendants, and each of them, were the agent, servant, employee, or in some other legal relationship to the others, whereby legal liability is imputed from one party to the others, and at all

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

relevant times, Fashion Nova, Mr. Saghian and the Doe Defendants were acting within the course and scope of their agency, servant or employment relationship.

## JURISDICTION AND VENUE

16.     Pursuant to Title 28 U.S.C. § 1331, this Court has subject matter jurisdiction because this matter involves questions, issues and/or claims arising under federal antitrust laws—namely, Sections 1 and 2 of the Sherman Antitrust Act.

17.     Pursuant to 15 U.S.C. § 22, this Court has general personal jurisdiction over Fashion Nova because Fashion Nova's business is based in Los Angeles, California, and has specific personal jurisdiction over Fashion Nova because Fashion Nova is a corporation and transacts and conducts business in this District. Furthermore, this Court has general and specific jurisdiction over Mr. Saghian because Mr. Saghian resides and conducts business in, and/or maintains signification connections with, this District.

18.     Pursuant to Title 28 U.S.C. § 1391(b)(2), venue is proper in this Court because, *inter alia*, a substantial part of the events or omissions giving rise to Honey Bum's claims occurred in this District.  Furthermore, venue is proper in this Court because, pursuant to 15 U.S.C. § 22, Fashion Nova is a corporation and an inhabitant of, may be found in and/or transacts business in this District and because Mr. Saghian resides and conducts business in this District.

## FACTUAL BACKGROUND

**The Relevant Product and Geographical Markets At-Issue.**

19.     Los Angeles-sourced fast fashion online clothing retail is a relevant antitrust product market.

20.     Fast fashion online clothing retail is readily distinguishable from traditional online clothing retail.  Among other things, the key differences exist in how products, goods and merchandise are sourced and offered for sale.  With respect to sourcing, in fast fashion, inventory is typically locally-sourced through vendors that possess the capability to quickly produce clothing to meet a retailer's specific needs.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

At times, this happens in the matter of a few days.  By contrast, traditional online clothing retailers require many weeks and/or months to conceptualize a design, create samples and adjust the design or composition before producing the items at factories located far away from their home offices and warehouses, all of which dictates much greater lead times between production and sale.  With respect to how products are offered for sale, fast fashion retailers typically advertise their products, goods and merchandise on social media platforms to quickly reach their consumer base and operate without brick-and-mortar locations. Traditional retailers tend to advertise in printed magazines, targeted mailers and/or through the store windows at their physical retail locations.

21.    Speed to market is an essential element for any successful fast fashion online clothing retailer.  This further distinguishes fast fashion online retail from traditional online clothing retail.  Fast fashion—by definition—necessitates sourcing products, goods and merchandise in a retailer's immediate geographical area in order to quickly meet consumer demand.  Thus, vendors outside of a retailer's geographical area are not reasonably close substitutes because less-proximate vendors increase lead times, add untenable delays to market and increase costs.  By way of example, a Los Angeles-sourced fast fashion online clothing retailer that attempted to source products, goods and/or merchandise from somewhere outside of Los Angeles could very well receive its products, goods or merchandise long after demand for said items had passed, thereby forcing the retailer to absorb the cost of unsold goods.

22.    Los Angeles is its own geographical market.  Although the Los Angeles fashion marketplace is relatively expansive, the number of specific vendors in the Los Angeles area that offer products, goods and merchandise for fast fashion online clothing retailers is notably finite.  On information and belief, approximately 20 vendors in Los Angeles offer the capability and specific products, goods and merchandise required for a Los Angeles-sourced fast fashion online clothing retailer to operate successfully.

6

COMPLAINT

23.    Los Angeles-sourced fast fashion online clothing retail is its own relevant market because the fast fashion industry places a substantial emphasis on locality due to the importance of speed to market.  Fast fashion companies in Los Angeles do not compete with fast fashion companies in New York City, because of the reliance on speed to market.  To be competitive in fast fashion in Los Angeles, fashion must be sourced from Los Angeles vendors.

24.    Los Angeles-sourced fast fashion online clothing retail is a highly concentrated industry with only a small number of competitors.  Within this highly concentrated industry, Fashion Nova holds approximately 70% market share as sales to Fashion Nova constitute approximately 70% of each fast fashion vendor's sales. Windsor Fashion, the next biggest competitor, holds approximately 10% market share. Honey Bum held approximately 2% market share in 2017 and the first quarter of 2018 and was trending towards holding 10% or more market share thereafter.  The other competitors comprise the remaining percentage of the share of the Los Angeles-sourced fast fashion online clothing retail market.

25.    Only a specific type of vendor can supply fast fashion online clothing retail companies.  Among other things, this specific type of vendor must be flexible enough to adapt to ever-changing fashion trends, demands and online orders.  Only vendors with the ability to produce customized fashion goods within a matter of days can operate in fast fashion.  Therefore, fast fashion vendors do not compete with vendors who supply clothing more generally.  Los Angeles-based fast fashion vendors do not compete with vendors outside of Los Angeles because, due to the necessity of speed to market, vendors must be able to produce and supply fashion goods without delay.  Therefore, Los Angeles fast fashion vendors only serve companies based in Los Angeles for true fast fashion.  The Los Angeles-based fast fashion vendor market consists of approximately 20 vendors, such as:  (i) 36.5; (ii) Better Be; (iii) Bear Dance; (iv) Blue Blush; (v) Dippin' Daisy; (vi) Hot and Delicious; (vii) Ktoo; (viii) May Pink; (ix) Sabora; (x) Vibrant; and (xi) Vivaswim, among others.  On information and belief,

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

Fashion Nova saw to it that approximately 70% of the 20 available vendors refused to do business with Honey Bum *at the demand of Fashion Nova and/or Mr. Saghian*. This substantially—and irreparably—effected Honey Bum's sales, growth, profitability and reputation, among other things.

**Honey Bum Opens for Business and is Quickly Stifled by Fashion Nova and/or Mr. Saghian**

26.     Honey Bum was founded in Los Angeles, California in March 2017. A Los Angeles-sourced fast fashion online clothing retailer, Honey Bum began selling products to customers in July 2017.

27.     Honey Bum's retail business relies heavily on acquiring products, goods and/or merchandise from vendors based in Los Angeles.  The use of local vendors allows Honey Bum to quickly respond to emerging trends and acquire the necessary supply to meet the demands of its customers.

28.     In its first few months, Honey Bum saw hundreds of thousands of dollars in sales and, by the end of 2017, would see total sales in excess of $600,000.  However, Honey Bum's appearance in the fast fashion marketplace and its immediate success did not go unnoticed by the dominant player in the market—Fashion Nova.

29.     Like Honey Bum, Fashion Nova is a Los Angeles-sourced fast fashion online clothing retailer based in Los Angeles.  However, unlike the newcomer Honey Bum, Fashion Nova is a major player in the fast fashion market and has been for more than a decade.

30.     Despite its superior presence in the market, Fashion Nova attempted to stifle Honey Bum's growth and success so as to gain a monopoly over the fast fashion industry in Los Angeles.

**Fashion Nova and/or Mr. Saghian Caused Vendors to Refuse Honey Bum's Business.**

31.     Between about July 2017 and August 2017, Honey Bum regularly acquired products, goods and/or merchandise from a number of vendors in Los

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Angeles and was doing so routinely and successfully.  Among others, Honey Bum has acquired or has attempted to acquire merchandise from:  (i) 36.5; (ii) Better Be; (iii) Bear Dance; (iv) Blue Blush; (v) Dippin' Daisy; (vi) Hot and Delicious; (vii) Ktoo; (viii) May Pink; (ix) Sabora; (x) Vibrant; and (xi) Vivaswim.

32.    However, beginning in or about August 2017, Fashion Nova began pressuring vendors to refuse Honey Bum's orders and/or refuse to do business with Honey Bum altogether by threatening to cancel, discontinue and/or withhold Fashion Nova's orders or business if said vendors did not comply (the "Fashion Nova Edict").

33.    Shortly thereafter, when asked whether Fashion Nova was preventing Honey Bum from purchasing products, goods and/or merchandise from vendors in Los Angeles, Fashion Nova's CEO—Richard D. Saghian—admitted in a text message that he had told "a couple of [ ] vendors" not to sell to Honey Bum (the "Saghian Edict").

34.    On or about August 4, 2017, Better Be, which had quickly become one of Honey Bum's top vendors, suddenly refused Honey Bum's business.  Better Be's refusal caused major financial and operational problems for Honey Bum.  Through various conversations with Better Be's employees, Honey Bum learned that Better Be's sudden refusal was due to the Fashion Nova Edict and/or the Saghian Edict.

35.    Then, in or about October 2017, two additional vendors—36.5 and Blue Blush—refused to accept Honey Bum's orders.  On information and belief, the Fashion Nova Edict and/or the Saghian Edict caused 36.5 and Blue Blush to refuse Honey Bum's orders.

36.    Later that month, Honey Bum had problems with Vibrant—one of the biggest denim suppliers in Downtown Los Angeles.  Honey Bum and Vibrant had collaborated to launch a denim collection and, on October 26, 2017, Honey Bum released a number of Vibrant's products on its website.  The following day, Vibrant bought back its merchandise and demanded that Honey Bum remove its products from the Honey Bum website immediately.  On information and belief, Vibrant's actions were caused by the Fashion Nova Edict and/or the Saghian Edict.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

37.     Days later, on or about November 1, 2017, Honey Bum had orders cancelled by Hot and Delicious and, for the second time, 36.5, Better Be and Blue Blush each cancelled orders placed by Honey Bum. On information and belief, the Fashion Nova Edict and/or the Saghian Edict caused the cancellation of these orders.

38.     On or about February 6, 2018, Honey Bum placed an order with another one of its regular vendors in Los Angeles—Bear Dance.  Later that evening, Honey Bum received an e-mail from the Vice President of Bear Dance in which the Vice President wrote:  "We were just informed that Honeybum (sic) is in direct competition with another one of our vendors.  Unfortunately, we will not be able to process any more orders at this time."  Worried that it might not receive the merchandise it had ordered earlier that day, Honey Bum responded to ask whether its February 6 order would be "fulfilled or cancelled."  Bear Dance's Vice President responded:  "We will go ahead and cancel it from our side."  On information and belief, Bear Dance's cancellation of Honey Bum's February 2018 orders and refusal to do business with Honey Bum were caused by the Fashion Nova Edict and/or the Saghian Edict.

39.     About two weeks later, Honey Bum placed orders with two vendors— Ktoo and Jealous Tomato.  Shortly thereafter, both orders were cancelled.  When asked to explain the cancellations, representatives for both vendors referenced the Fashion Nova Edict and/or Saghian Edict and said they were not allowed to sell to Honey Bum.

40.     Later that same month, Honey Bum placed a number of orders with American Bazi—a well-known vendor in Los Angeles.  On or about February 21, 2018, American Bazi cancelled Honey Bum's orders and a representative for the vendor stated that American Bazi would no longer work with Honey Bum.  On information and belief, American Bazi's cancellation of Honey Bum's February 2018 orders and refusal to do business with Honey Bum were caused by the Fashion Nova Edict and/or the Saghian Edict.

41.     On or about April 3, 2018, one of Honey Bum's buyers visited a vendor named Double Zero with whom Honey Bum had done business in the past.  When

attempting to place an order, a representative for Double Zero stated that it could no longer do business with Honey Bum. On information and belief, the Fashion Nova Edict and/or the Saghian Edict caused Double Zero to refuse this order and to refuse Honey Bum's business.

42.     On April 5, 2018, Honey Bum placed an order with May Pink.  The next day, a manager at May Pink told Honey Bum to cancel the order.  When asked why the order was being cancelled, May Pink's manager said that the vendor could no longer do business with Honey Bum because Fashion Nova had sent them a "Final Notice".  On information and belief, the "Final Notice" is the same as, or substantially similar to, the Fashion Nova Edict and/or the Saghian Edict.

43.     On or about April 6, 2018, French Kiss, Rock N Roses and LuxLA each cancelled orders submitted by Honey Bum.  On information belief, these cancellations were due to the Fashion Nova Edict and/or the Saghian Edict.

44.     Days later, on or about April 10, 2018, Honey Bum had an order cancelled by Doo B Doo B.  On information and belief, the Fashion Nova Edict and/or the Saghian Edict caused Doo B Doo B to cancel this order.

45.     In or about April 2018, Honey Bum launched a swim wear line relying on Vivaswim—also known as Dippin' Daisy—for its merchandise.  In connection with the launch, Honey Bum invested in marketing and photoshoots for the items to be purchased from Vivaswim.  In the first week following the launch, Honey Bum sold thousands of dollars of its new swim wear merchandise to its customers.  On April 17, 2018, Honey Bum placed an order with Vivaswim to fill its first wave of customer orders.  On April 19, 2018, Vivaswim's CEO responded to the order request via e-mail, writing that Honey Bum's order was "well received" and providing information about the availability of a certain item.  Then, things took a turn for the worse.  On April 24, 2018, Vivaswim's CEO sent an e-mail to Honey Bum in which she wrote: "I would like to cease all future business transactions with your company[.]"  This sudden change meant that Honey Bum was unable to fill the orders placed by its

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

customers for merchandise initially promised by Vivaswim.  Shortly thereafter, Honey Bum learned that the merchandise it ordered on April 17—which was not being sold by Fashion Nova at the time the order was placed—was now offered for sale on Fashion Nova's website.  On information and belief, Vivaswim's decisions to cancel Honey Bum's order and refuse Honey Bum's business were caused by the Fashion Nova Edict and/or the Saghian Edict.

46.    On or about April 24, 2018, Blue Blush cancelled another of Honey Bum's orders.  When asked what could be done to reinstate the order, Blue Blush's manager said that it could not work with Honey Bum and suggested that, if Honey Bum ordered under a different company name, the orders would be processed.  On information and belief, the Fashion Nova Edict and/or the Saghian Edict caused this order to be cancelled and prevented Blue Blush from doing business with Honey Bum.

47.    On or about May 1, 2018, Sabora cancelled Honey Bum's order.  When asked why the order was cancelled, a representative from Sabora said that they could not sell to Honey Bum.  On information and belief, the Fashion Nova Edict and/or the Saghian Edict caused Sabora to cancel Honey Bum's order and refuse its business.

48.    In or about November 2018, Tic Toc—one of Honey Bum's top vendors—refused to fulfill any new orders.  When asked why, a representative for Tic Toc said that they were barred from doing business with Honey Bum.  On information and belief, Tic Toc's refusal to fulfill Honey Bum's orders and refusal to do business with Honey Bum were caused by the Fashion Nova Edict and/or the Saghian Edict.

49.    In or about June 2019, Honey Bum attempted to reconnect with a popular vendor that had cancelled its orders due to the Fashion Nova Edict and/or the Saghian Edict in 2017—Hot and Delicious—for the purpose of purchasing merchandise.  In response to e-mails sent by Honey Bum's CEO, the General Manager of Hot and Delicious informed Honey Bum that they would continue to refuse Honey Bum's business.  On information and belief, the Fashion Nova Edict and/or the Saghian Edict caused Hot and Delicious to continue to refuse Honey Bum's business in 2019.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

50.    In or about May 2020, a newly-hired buyer for Honey Bum contacted Better Be—one of Honey Bum's top vendors in August 2017 and the first vendor to refuse Honey Bum's business—to place an order for new merchandise.  In response, a manager at Better Be provided a sales order form and color swatches.  Honey Bum confirmed the order and agreed to remit the deposit amount requested by Better Be.  On May 19, 2020, Honey Bum's buyer met with Better Be's manager to discuss and finalize the order.  However, after the meeting on May 19, 2020, Better Be's manager sent a text message to Honey Bum's buyer in which she wrote:  "We are very sorry to say that [Better Be] won't accept your orders."  On information and belief, the Fashion Nova Edict and/or the Saghian Edict again caused Be Better to cancel this order and/or refuse to accept Honey Bum's orders.

51.    Recently, in or about July 2020, Honey Bum again attempted to order merchandise from Tic Toc.  When Honey Bum contacted the vendor to discuss the orders, the vendor's representative renewed its refusal to work with Honey Bum, writing:  "the circumstance is the same as before".  On information and belief, the Fashion Nova Edict and/or the Saghian Edict caused Tic Toc to refuse to fulfill Honey Bum's orders and/or refuse to do business with Honey Bum.

**The Los Angeles-Based Vendors Conspired to Form an Illegal *Per Se* Group Boycott of Honey Bum.**

52.    When Honey Bum entered the market for Los Angeles-sourced fast fashion, vendors were excited to do business with a new entrant, which would have, in turn, helped diversify customers, increase supply outlets and reduce dependence on Fashion Nova.   In general, fast fashion vendors operate with high overhead costs due to their brick and mortar stores and therefore work very diligently to make sales.

53.    Honey Bum was a threat to Fashion Nova's low cost fast fashion image, and, more importantly, its profit margins.  As set forth more fully below, Honey Bum's sales grew quickly and were predicted to surpass $130 million by 2020.

54.    In response, the Fashion Nova Edict and/or the Saghian Edict were

instituted, whereby Fashion Nova and/or Mr. Saghian entered into agreements, or conspiracies, with certain vendors to prevent each from supplying Honey Bum with inventory.  Absent an express or implied agreement among the vendors, it would have been economically irrational for any vendor to agree to such a nefarious scheme.

55.    Fashion Nova and/or Mr. Saghian discussed this policy with each of its vendors and each vendor boycotted Honey Bum in response.  Each vendor knew that breaching the agreement, or conspiracy, by attempting to increase its supply outlets and providing inventory to Honey Bum would result in the elimination of a substantial profit from losing its vendor status and/or business relationship with Fashion Nova.

56.    Some vendors complied with the Fashion Nova Edict and/or the Saghian Edict immediately for fear of losing Fashion Nova as a customer.

57.    But, some vendors waited to ensure that other vendors complied with the Fashion Nova Edict and/or Saghian Edict before they complied themselves.  This pattern of "wait and see" behavior underscores that each vendor was afraid to curb sales to Honey Bum alone, because otherwise its rivals would cheat and gain a special advantage in the popular and growing Los Angeles-sourced fast fashion market and enjoy the profits from the new entrant in the marketplace.

58.    Compliance with the Fashion Nova Edict and/or the Saghian Edict was not in vendors' own self-interest.  Prior to the institution of the Fashion Nova Edict and/or the Saghian Edict, vendors had been working to increase sales to Honey Bum and decrease dependence on Fashion Nova.  The sudden adoption of the Fashion Nova Edict and/or the Saghian Edict ran against the vendors' independent economic self-interest and constituted a radical shift from their prior practices.  This unanimity of action and clear break from prior business practices cannot be explained by chance or coincidence, particularly given the vendors' abrupt unanimous decision to simultaneously deprive themselves, collectively, of a profitable sales outlet.

59.    Fashion Nova and/or Mr. Saghian policed the agreement, or conspiracy, by ensuring that any vendor who broke from compliance was forced back into

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

compliance.  As set forth above, numerous vendors—such as, Hot and Delicious, Better Be, Blue Blush, Bear Dance, Ktoo, Jealous Tomato, American Bazi, May Pink, and Vivaswim, among others—initially accepted orders from Honey Bum only to cancel said orders days, and sometimes hours, later.  The vendors' wait and see behavior and Fashion Nova's policing of the conspiracy illustrate that not only had the vendors agreed individually with Fashion Nova and/or Mr. Saghian to comply with the edicts, but also, they had—at least implicitly, if not explicitly—agreed amongst themselves to participate in the group boycott.

60.    Fashion Nova and/or Mr. Saghian have worked on constructing and enforcing this group boycott for years, constantly faced with the hindrance of convincing vendors to give up a fast growing and profitable channel of distribution through Honey Bum.

61.    Given consistently increasing demand for fast-fashion and short supply in Los Angeles (created by Fashion Nova), Fashion Nova and/or Mr. Saghian constantly contended with vendors who might break ranks and sell to Honey Bum, thereby gaining sales at the other vendors' expense.  This constant fear necessitated a horizontal agreement among the vendors not to do business with Honey Bum.

62.    On information and belief, the vendors thus boycotted Honey Bum on the condition that their competitors would do the same.

63.    As set forth above, Fashion Nova and/or Mr. Saghian blatantly admitted to Honey Bum via text message that it was discussing the Fashion Nova Edict and/or the Saghian Edict with vendors.  After the conspiracy was constructed, Fashion Nova served as a central clearinghouse for complaints about breaches of the agreement.   Indeed, Fashion Nova's buyers patrolled the fast fashion vendors on a daily basis to determine to whom they were selling.  Fashion Nova further patrols fast fashion vendor sales to Honey Bum by tracking vendor style numbers, which are unique to each vendor and to each style offered.  Vendors consistently fear selling a style number to Honey Bum that Fashion Nova can track.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

64.    Honey Bum communicated its concerns about its inability to purchase sufficient supply to several key vendors, meaning the vendors knew that the agreement was being implemented across Fashion Nova suppliers and being enforced.  Indeed, vendors who were rejecting Honey Bum orders specifically asked Honey Bum which fast fashion vendors were supplying Honey Bum with inventory, likely to ensure that Fashion Nova was enforcing the conspiracy as to all vendors.

65.    The fast fashion vendors are substantially located within approximately two city blocks in downtown Los Angeles.  In many instances, if not most, the vendors are next door to each other.  Fast fashion vendors are in daily communication with each other and with the patrolling Fashion Nova buyers.  The owners of the fast fashion vendor companies are not only business colleagues, but, in many cases, personal friends.  The fast fashion vendors are part of a tight knit community.

66.    The Fashion Nova Edict was so well known within the fast fashion vendor community that Honey Bum began to have trouble hiring buyers, as the buyers even knew that the fast fashion vendors had agreed not to sell to Honey Bum.

67.    The conspiracy constructed by Fashion Nova and/or Mr. Saghian worked.  Honey Bum's market share fell over the relevant period despite third-party forecasts it would grow substantially, as set forth below.  Fashion Nova, on the other hand, is a monopolist over Los Angeles-sourced fast fashion, wielding its substantial market power over Los Angeles-based vendors to prevent Honey Bum from competing.  More than 10 vendors reduced fast fashion output to comply with the Fashion Nova Edict and/or Saghian Edict.

68.    On information and belief, the purpose and effect of Fashion Nova's agreement with vendors was to form an illegal *per se* group boycott of Honey Bum. No procompetitive justification exists for Honey Bum's exclusive contracts with vendors.  No efficiencies of distribution are gained from exclusive contracts with vendors in the fast fashion industry.  Furthermore, no justification exists for exclusive contracts with approximately 70% of the key fast fashion vendors in Los Angeles.

**Honey Bum Attempted to Operate Despite the Edicts and Group Boycott.**

69.     In an attempt to stay afloat in spite of the Fashion Nova Edict and the Saghian Edict, Honey Bum began placing orders with vendors through companies other than Honey Bum.  Initially, Honey Bum had success buying merchandise in Los Angeles under different names.  But Fashion Nova was not done.

70.     Given the relatively tight-knit nature of the market and limited pool of possible vendors, the employees and representatives charged with buying merchandise for Fashion Nova quickly and easily identified Honey Bum's employees and representatives.  As early as 2017, Fashion Nova's buyers began following Honey Bum's employees and representatives into vendors to enforce the Fashion Nova Edict and/or the Saghian Edict and pressure the vendors to reject Honey Bum's orders, regardless of the company name on the purchase order.  On information and belief, this tactic resulted in the cancellation of certain orders and caused certain vendors to refuse to do business with Honey Bum.

71.     Having been essentially prevented from buying merchandise in Los Angeles, Honey Bum attempted to purchase merchandise abroad.  However, given the nature of the fast fashion industry, the added lead times associated with purchasing merchandise internationally was extremely inefficient and rendered Honey Bum's business all but non-existent.

**The Anti-Competitive Acts Taken by Fashion Nova and/or Mr. Saghian Gave Rise to an Antitrust Injury to the Relevant Market.**

72.     In addition to damaging Honey Bum's business, as set forth below, Fashion Nova's and Mr. Saghian's monopolistic and anti-competitive conduct has injured the market for Los Angeles-sourced fast fashion more generally.

73.     Fashion Nova's and Mr. Saghian's monopolization of Los Angeles-based vendors has created substantial barriers to entry for any Los Angeles-sourced fast fashion online clothing retailer.  Without access to approximately 70% of vendors, Los Angeles-sourced fast fashion online clothing retail competitors face a significant

deterrent to market entry.  On information and belief, no new Los Angeles-sourced fast fashion online clothing retailer has entered the market in the past 12 months.

74.    In order to enter the Los Angeles-sourced fast fashion fast fashion online clothing retail industry, companies need access to more than 30% of the available vendors.  Without such access, any business attempting to compete with Fashion Nova would lack the ability to acquire meaningful and necessary supply.  This would essentially reduce a would-be competitor to acquiring goods from inferior or less-desirable vendors and selling goods that were not in demand and/or that Fashion Nova did not wish to sell itself.

75.    Furthermore, Fashion Nova's and/or Mr. Saghian's exclusion of competitors functions to decrease consumer choice for fast fashion and, without competition, allows Fashion Nova to raise prices and/or decreased quality.

**The Fashion Nova Edict and/or the Saghian Edict Damaged Honey Bum.**

76.    After opening for business in June 2017, Honey Bum began to experience rapid growth and appreciable success.  In the third quarter of 2017—the first quarter it was operational—Honey Bum recorded nearly $200,000 in revenue.  The following quarter, Honey Bum's revenue more than doubled to more than $400,000.

77.    Honey Bum's growth continued into 2018.  In the first quarter of 2018, Honey Bum recorded nearly $500,000 in revenue and revenue of approximately $600,000 in the second quarter of 2018.

78.    Based on Honey Bum's actual results before the Fashion Nova Edict and/or the Saghian Edict had taken full effect, a well-known and highly-respected accounting firm analyzed the data, crunched the numbers and ultimately projected that Honey Bum's revenue would near $30 million in 2018, exceed $90 million in 2019 and would surpass $130 million in 2020 (the "2018 Valuation").  But for the Fashion Nova Edict and/or the Saghian Edict, Honey Bum would have achieved these projected levels of success or had substantially similar levels of success.

79.    As its business continued to trend upwards and in anticipation of its

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

projected growth, Honey Bum expanded from its original office space by leasing a large warehouse and hired additional employees to meet growing customer demand.

80.     However, due to the Fashion Nova Edict and/or the Saghian Edict, the acts of Fashion Nova's employees and representatives, and the effects of both on certain vendors in Los Angeles, Honey Bum's growth and success were severely impacted.  Beginning in the third quarter of 2018, Honey Bum experienced a steep decline in its quarterly revenue.  After growing steadily quarter after quarter, Honey Bum recorded a little more than $300,000 in the third quarter of 2018 and less than $300,000 in the fourth quarter of 2018—far less than the 2018 Valuation projected.

81.     Honey Bum's declining revenue and its struggle to acquire merchandise in Los Angeles forced the company to accept unfavorable capital investments that it would not have considered, but for the Fashion Nova Edict, the Saghian Edict and/or the acts of Fashion Nova's employees and representatives.  To raise capital necessary to continue its operations, Honey Bum's CEO and three other individuals made a sizeable personal loan to the company.  Then, after seeing its revenue decline in the third and fourth quarters of 2018, Honey Bum accepted unfavorable bridge loans from various merchants and lenders.  When these funds proved insufficient, Honey Bum accepted loans from friends and family members and even sold a portion of the company to an investor at a valuation that was approximately one-third of the 2018 Valuation just to keep enough funds on hand to continue to function.

82.     In addition to the unfavorable debt, the Fashion Nova Edict and/or the Saghian Edict and the lasting effects thereof forced Honey Bum to:  (i) move out of its larger warehouse space; and (ii) release some of its newly-hired employees.

83.     Further, the Fashion Nova Edict and/or Saghian Edict damaged Honey Bum's reputation, not only in the marketplace but also amongst vendors and suppliers.  On information and belief, due to the Fashion Nova Edict and/or the Saghian Edict and the close-knit nature of the vendor and industry in Los Angeles, Honey Bum was unable to brand its trucks or building and could not properly promote its name for fear

of vendors refusing its business.

84.     Additionally, the Fashion Nova Edict and/or the Saghian Edict prevented Honey Bum from hiring necessary employees.  Once in place, the Fashion Nova and/or Saghian Edict made it difficult and frustrating—if not impossible—for buyers to acquire products, goods and merchandise for Honey Bum.  This lead to buyers refusing to work with Honey Bum and/or ending their employment.

85.     Ultimately, the Fashion Nova Edict and/or the Saghian Edict functioned to curtail Honey Bum's growth and momentum in the marketplace.  Honey Bum had a terrific start and was an immediate success.  This initial success resulted in a strong team morale and working environment within Honey Bum, positive goodwill in the marketplace with consumers and vendors alike, and excitement—both internally and externally—surrounding the prospect of Honey Bum's continued, future success.  Due to the Fashion Nova Edict and/or Saghian Edict, the positive and promising team morale, environment, goodwill and excitement were destroyed—possibly forever.

86.     Despite efforts to mitigate its damages, Honey Bum's business has been irreparably harmed by Fashion Nova's and/or Mr. Saghian's actions.   Having exhausted its options and being unable to reestablish its prior level of success or growth, Honey Bum is left with no other option than to bring this action.

## FIRST CAUSE OF ACTION

## VIOLATION OF SHERMAN ANTI-TRUST ACT, SECTION 1

*(Against Defendant Fashion Nova, Inc.)*

87.     Plaintiff Honey Bum, LLC hereby repeats and incorporates by reference each and every one of the allegations contained in the foregoing paragraphs of this Complaint as if fully stated herein.

88.     *First*, Fashion Nova violated Section 1 of the Sherman Anti-Trust Act by, among other things, imposing the Fashion Nova Edict and causing numerous Los Angeles-based fast fashion vendors to cancel Honey Bum's orders and/or refuse to do business with Honey Bum, defendant Fashion Nova, Inc. acted and/or conspired to

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

unreasonably restrain trade in the relevant market related to the sale of Los Angeles-sourced fast fashion products, goods and/or merchandise to consumers. Furthermore, Fashion Nova used threats, intimidation, illegal exclusive purchasing, exclusive contracting, dealing and/or control of merchandise to unreasonably restrain trade to create illegal monopolies in the relevant market, as set forth above.

89. *Second*, Fashion Nova's acts and/or conspiracies to act to restrain trade in certain markets constitute a group boycott—a *per se* violation of Section 1 of the Sherman Antitrust Act. As set forth above, the Fashion Nova Edict coupled with certain vendors' cooperation therewith and consent thereto constitute a group boycott. For the reasons set forth above, Fashion Nova and certain vendors have entered into an unlawful horizontal agreement to boycott and refuse to deal with Honey Bum. Such contracts, combinations, or conspiracies among various horizontal competitors to refuse to deal with a company like Honey Bum is the very type of anticompetitive group boycott agreement subject to *per se* condemnation under Section 1 of the Sherman Act. The boycott established between and among Fashion Nova and certain vendors cuts off access to supply necessary to enable Honey Bum to compete—particularly where Fashion Nova possesses a dominant market position—and these practices are not justified by plausible arguments that they enhance overall efficiency or competition. Honey Bum has suffered and will continue to suffer antitrust injury to its business and property as a direct and proximate result of the unlawful conspiracy implemented between and among Fashion Nova and certain vendors. Certain vendors' refusal to contract has subjected Honey Bum to a group boycott and refusal to deal. No exemptions exist to shield this *per se* illegal group boycott. Honey Bum has lost, and will continue to lose, business and has suffered, and will continue to suffer, irreparable harm to its business and property as a result of the unlawful conspiracy between and among Fashion Nova and certain vendors. As a result of the group boycott, among other things, Honey Bum's ability to develop relationships in the relevant market has been, and will continue to be, impaired.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

90. As a result of Fashion Nova's actions, Honey Bum was foreclosed from approximately 70% of the available vendors in the relevant market and more than 70% of the relevant market.

91. As a result of the harm caused by Fashion Nova to competition in the relevant market, Honey Bum has been injured in its business and property, including lost profits and lost enterprise value among other damages, in an amount to be demonstrated according to proof.

92. In addition to monetary damages, Honey Bum is also entitled to and hereby seeks injunctive relief to restore competition in the relevant market.

## SECOND CAUSE OF ACTION

## VIOLATION OF SHERMAN ANTI-TRUST ACT, SECTION 1

(*Against Defendant Richard D. Saghian*)

93. Plaintiff Honey Bum, LLC hereby repeats and incorporates by reference each and every one of the allegations contained in the foregoing paragraphs of this Complaint as if fully stated herein.

94. *First*, Mr. Saghian violated Section 1 of the Sherman Anti-Trust Act by, among other things, imposing the Saghian Edict and causing numerous Los Angeles-based fast fashion vendors to cancel Honey Bum's orders and/or refuse to do business with Honey Bum, defendant Richard D. Saghian acted and/or conspired to unreasonably restrain trade in the relevant market related to the sale of Los Angeles-sourced fast fashion products, goods and/or merchandise to consumers. Furthermore, Richard D. Saghian used threats, intimidation, illegal exclusive purchasing, exclusive contracting, dealing and/or control of merchandise to unreasonably restrain trade to create illegal monopolies in the relevant market, as set forth above.

95. *Second*, Richard D. Saghian's acts and/or conspiracies to act to restrain trade in certain markets constitute a group boycott—a *per se* violation of Section 1 of the Sherman Antitrust Act. As set forth above, the Saghian Edict and certain vendors' cooperation therewith and consent thereto constitute a group boycott. For

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

the reasons set forth above, Richard D. Saghian and certain vendors have entered into an unlawful horizontal agreement to boycott and refuse to deal with Honey Bum. Such contracts, combinations, or conspiracies among various horizontal competitors to refuse to deal with a company like Honey Bum is the very type of anticompetitive group boycott agreement subject to *per se* condemnation under Section 1 of the Sherman Act. The boycott established between and among Richard D. Saghian and certain vendors cuts off access to supply necessary to enable Honey Bum to compete—particularly where Fashion Nova possesses a dominant market position—and these practices are not justified by plausible arguments that they enhance overall efficiency or competition. Honey Bum has suffered and will continue to suffer antitrust injury to its business and property as a direct and proximate result of the unlawful conspiracy implemented between and among Richard D. Saghian and certain vendors. Certain vendors' refusal to contract has subjected Honey Bum to a group boycott and refusal to deal. No exemptions exist to shield this *per se* illegal group boycott. Honey Bum has lost, and will continue to lose, business and has suffered, and will continue to suffer, irreparable harm to its business and property as a result of the unlawful conspiracy between and among Richard D. Saghian and certain vendors. As a result of the group boycott, among other things, Honey Bum's ability to develop relationships in the relevant market has been, and will continue to be, impaired.

96.    As a result of Richard D. Saghian's actions, Honey Bum was foreclosed from approximately 70% of the available vendors in the relevant market and more than 70% of the relevant market.

97.    As a result of the harm caused by Richard D. Saghian to competition in the relevant market, Honey Bum has been injured in its business and property, including lost profits and lost enterprise value among other damages, in an amount to be demonstrated according to proof.

98.    In addition to monetary damages, Honey Bum is also entitled to and hereby seeks injunctive relief to restore competition in the relevant market.

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

**THIRD CAUSE OF ACTION**

**VIOLATION OF SHERMAN ANTI-TRUST ACT, SECTION 2**

(*Against Defendant Fashion Nova, Inc.*)

99.   Plaintiff Honey Bum, LLC hereby repeats and incorporates by reference each and every one of the allegations contained in the foregoing paragraphs of this Complaint as if fully stated herein.

100.   By, among other things, imposing the Fashion Nova Edict and causing numerous Los Angeles-based fast fashion vendors to cancel Honey Bum's orders and/or refuse to do business with Honey Bum, defendant Fashion Nova, Inc. acted to create and/or conspired to create monopolies in the relevant market related to the sale of Los Angeles-sourced fast fashion products, goods and/or merchandise to consumers for the purpose of creating a single enterprise and/or to monopolize and maintain its monopoly in the relevant market, as set forth above.

101.   Fashion Nova acted to illegally maintain and/or conspired to illegally maintain its monopoly through threats, intimidation and/or illegal exclusive purchasing, dealing and/or control of merchandise in the relevant market by, among other things, imposing the Fashion Nova Edict and causing numerous Los Angeles-based fast fashion vendors to cancel Honey Bum's orders and/or refuse to do business with Honey Bum.

102.   Fashion Nova's acts and/or conspiracies resulted in:  (i) Fashion Nova having and maintaining a monopoly over approximately 70% or more of the available vendors in the relevant market; (ii) Fashion Nova having and maintaining a monopoly over approximately 70% or more of the relevant market itself;  (iii) raised barriers to entry that are insurmountable; and (iv) the exclusion of Honey Bum and others from competing from selling certain fashion products, goods and/or merchandise to customers in the relevant market.

103.   As a result of the harm caused by Fashion Nova to the relevant market, Honey Bum has been injured in its business and property, including lost profits, lost

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

enterprise value and loss of reputation and/or credibility among other damages, in an amount to be demonstrated according to proof.

104. In addition to monetary damages, Honey Bum is also entitled to and hereby seeks injunctive relief to restore competition in the relevant market.

## FOURTH CAUSE OF ACTION

## VIOLATION OF SHERMAN ANTI-TRUST ACT, SECTION 2

(*Against Defendant Richard D. Saghian*)

105. Plaintiff Honey Bum, LLC hereby repeats and incorporates by reference each and every one of the allegations contained in the foregoing paragraphs of this Complaint as if fully stated herein.

106. By, among other things, imposing the Saghian Edict and causing numerous Los Angeles-based fast fashion vendors to cancel Honey Bum's orders and/or refuse to do business with Honey Bum, defendant Richard D. Saghian acted to create and/or conspired to create monopolies in the relevant market related to the sale of Los Angeles-sourced fast fashion products, goods and/or merchandise to consumers for the purpose of creating a single enterprise and/or to monopolize and maintain a monopoly in the relevant market, as set forth above.

107. Richard D. Saghian acted to illegally maintain and/or conspired to illegally maintain that monopoly through threats, intimidation and/or illegal exclusive purchasing, dealing and/or control of merchandise in the relevant market by, among other things, imposing the Fashion Nova Edict and causing numerous Los Angeles-based fast fashion vendors to cancel Honey Bum's orders and/or refuse to do business with Honey Bum.

108. Richard D. Saghian's acts and/or conspiracies resulted in: (i) Fashion Nova having and maintaining a monopoly over approximately 70% or more of the available vendors in the relevant market; (ii) Fashion Nova having and maintaining a monopoly over approximately 70% or more of the relevant market itself; (iii) raised barriers to entry that are insurmountable; and (iv) the exclusion of Honey Bum and

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

others from competing from selling certain fashion products, goods and/or merchandise to customers in the relevant market.

109.   As a result of the harm caused by Richard D. Saghian to the relevant market, Honey Bum has been injured in its business and property, including lost profits, lost enterprise value and loss of reputation and/or credibility among other damages, in an amount to be demonstrated according to proof.

110.   In addition to monetary damages, Honey Bum is also entitled to and hereby seeks injunctive relief to restore competition in the relevant market.

## FIFTH CAUSE OF ACTION

## TORTIOUS INTERFERENCE WITH BUSINESS AND/OR CONTRACT

### (*Against Defendant Fashion Nova, Inc.*)

111.   Plaintiff Honey Bum, LLC hereby repeats and incorporates by reference each and every one of the allegations contained in the foregoing paragraphs of this Complaint as if fully stated herein.

112.   Beginning in 2017, Honey Bum developed business relationships with various clothing vendors in Los Angeles.

113.   By, among other things, imposing the Fashion Nova Edict and causing numerous Los Angeles-based fast fashion vendors to cancel Honey Bum's orders and/or refuse to do business with Honey Bum, defendant Fashion Nova Inc., through its affirmative acts and/or conspiracies and with knowledge of Honey Bum's business and relationships with certain vendors and intent, interfered with Honey Bum's business through the use of threats, intimidation, illegal exclusive purchasing, dealing and/or control of merchandise for the purpose of preventing Honey Bum from acquiring certain fashion products, goods and/or merchandise to sell to its customers.

114.   Honey Bum was damaged by Fashion Nova's intentional interference with its business and relationships with certain vendors in an amount equal to the value of all proceeds and revenues withheld from, or denied to, Honey Bum, together with interest accrued thereon, in an amount to be demonstrated according to proof.

115.   Honey Bum seeks a judgment against Fashion Nova for damages in an amount equal to the value of all revenues and proceeds denied by Fashion Nova, together with interest accrued thereon and all costs and attorneys' fees incurred by Honey Bum in connection with this action, in an amount to be demonstrated according to proof.

## SIXTH CAUSE OF ACTION

## TORTIOUS INTERFERENCE WITH BUSINESS AND/OR CONTRACT

### (*Against Defendant Richard D. Saghian*)

116.   Plaintiff Honey Bum, LLC hereby repeats and incorporates by reference each and every one of the allegations contained in the foregoing paragraphs of this Complaint as if fully stated herein.

117.   Beginning in 2017, Honey Bum developed business relationships with various clothing vendors in Los Angeles.

118.   By, among other things, imposing the Saghian Edict and causing numerous Los Angeles-based fast fashion vendors to cancel Honey Bum's orders and/or refuse to do business with Honey Bum, defendant Richard D. Saghian, through his affirmative acts and/or conspiracies and with knowledge of Honey Bum's business and relationships with certain vendors and intent, interfered with Honey Bum's business through the use of threats, intimidation, illegal exclusive purchasing, dealing and/or control of merchandise for the purpose of preventing Honey Bum from acquiring certain fashion products, goods and/or merchandise to sell to its customers.

119.   Honey Bum was damaged by Richard D. Saghian's intentional interference with its business and relationships with certain vendors in an amount equal to the value of all proceeds and revenues withheld from, or denied to, Honey Bum, together with interest accrued thereon, in an amount to be demonstrated according to proof.

120.   Honey Bum seeks a judgment against Richard D. Saghian for damages in an amount equal to the value of all revenues and proceeds denied by Richard D.

Saghian, together with interest accrued thereon and all costs and attorneys' fees incurred by Honey Bum in connection with this action, in an amount to be demonstrated according to proof.

## <u>CONCLUSION AND JURY DEMAND</u>

121.  For the foregoing reasons, plaintiff Honey Bum, LLC seeks an order finding that defendant Fashion Nova and/or defendant Richard D. Saghian are liable for damages, and that Honey Bum receive the following:  (i) injunctive relief to restore competition in the relevant markets voiding or otherwise dispensing with the Fashion Nova Edict, and prohibiting same in the future; (ii) injunctive relief to restore competition in the relevant markets voiding or otherwise dispensing with the Saghian Edict, and prohibiting same in the future; (iii) monetary relief with respect to Honey Bum's lost profits; (iv) monetary relief with respect to Honey Bum's lost enterprise value; (v) monetary relief with respect to Honey Bum's loss of reputation and/or credibility; (vi) monetary relief with respect to Honey Bum's injuries from increased development and operating costs, increased cost of capital, inability or impairment of its capacity to borrow or raise funds; (vii) trebled monetary damages; (viii) attorneys' fees awarded according to proof; (ix) pre- and post-judgment interest pursuant to California law; (x) such other and further relief to which Honey Bum may show it is entitled; and/or (xi) such other and further relief that this Court may deemed justified and to which Honey Bum may be entitled.

122.  Honey Bum hereby respectfully demands a trial by jury on all facts and causes of action to which it is entitled.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DM_US 174589556-8.112866.0011

COMPLAINT

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1

2    Dated:_____December 10, 2020          **MCDERMOTT WILL & EMERY LLP**

3

4                                           By:    */s/ Grant J. Maxwell*
                                                   MICHELLE S. LOWERY
5                                                  JON S. DEAN
                                                   JEFFERY D. MCFARLAND
6                                                  GRANT J. MAXWELL

7                                                  2049 Century Park East, Suite 3200
                                                   Los Angeles,  CA  90067-3206
8                                                  Telephone:   +1 310 277 4110
                                                   Facsimile:     +1 310 277 4730
9
                                                   Attorneys for Plaintiff
10                                                 HONEY BUM, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles